N. P. WARD v. A. WARD.

DE FORREST & Co. v. C. MILLER.

The Act of November 1st, 1871 (Pamphlet Acts, p. 17), authorized appeals from interlocutory judgments, orders, or decrees, thereafter rendered by the District Courts, and required that such appeals "be regulated by "the law regulating appeals from final judgments in the District Court, "so far as the same may be applicable thereto." *Held*, that this act is nugatory and void, for the reason that the statutes regulating appeals from final judgments are entirely inapplicable to appeals from interlocutory judgments.

APPEALS from Austin and Marion.

There is no occasion to state the facts of these cases. De Forrest v. Miller is the case designated as No. 1287 in the opinion. The only brief which has reached the reporter is that of—

*A. Chesley*, for the appellee, Ward.

WALKER, J. These cases are both appealed to this court from what are considered interlocutory judgments.

In No. 1364 the appellant moves to dismiss the appeal, for the reason that it was not perfected in time to be returnable to the present term of the court.

We have no doubt of the right of the appellant to dismiss the appeal, and we claim no right to adjudicate the case; but we here acknowledge ourselves under obligation to the attorney for appellee for the very able brief filed in the case, and we shall consider the question presented in No. 1287, hoping that our opinion may govern this and all similar cases in the District Court.

First, We will consider the points raised in No. 1364. This is an attempt at appealing from what is conceived to be an interlocutory judgment. The plaintiff below moved for a judgment by default, which, under the law and rules of practice, the court considered he was not entitled to.

According to Bouvier, an interlocutory judgment is one given in the progress of a cause, upon some plea, proceeding, or default, which is only intermediate, and does not finally determine or complete the suit; and this is Blackstone's definition, Vol. III., 396. This definition, although as exact as any found in the books, must necessarily leave the practitioner and the judge to determine, in every case, what is properly an interlocutory judgment.

Our statute not only includes the term judgment, but also the terms order and decree; but in practice they are virtually synonymous.

We are, however, of opinion that a simple refusal of the court to enter a judgment by default, to which the party may or may not be entitled under the rules of practice, is not a judgment, order, or decree, from which an appeal can be taken to this court under the Act of the Twelfth Legislature. (See Pamphlet Acts, p. 17, passed November 1st, 1871.)

But a much more difficult question for us to determine than the one we have disposed of, arises under this law, viz., Is the

law one which, in its present condition, can be enforced? The first section gives the right of appeal to the Supreme Court from any interlocutory order, judgment, or decree, entered in the District Court. The second section provides that appeals thus authorized shall be regulated as appeals from final judgments, so far as the law may be applicable. If, then, it is found that there is no law applicable which regulates appeals from final judgments, we are forced to the conclusion that the Act of November 1st, 1871, is nugatory and void.

There are certain essential conditions, under our law, applicable to all appeals. First, a bond must be filed within twenty days after the adjournment of the court; then a transcript must be filed with the clerk of the Supreme Court.

But the practitioner will be met, in attempting to appeal from interlocutory judgments, by an insurmountable difficulty at the very first stage of his proceedings.

What sort of bond must he file? There has been no judgment for damages or costs, yet, under Article 1493, Paschal's Digest, he must file a bond in double the amount of the debt or damages assessed. How can this be done? Will the provisions of Article 1492 apply? Certainly not, for here a special bond is provided for, where land has been recovered in the suit.

The poor man's bond will not answer, for that is given on affidavit, and can have no application to appeals from interlocutory orders or judgments. Nor can the provisions of Article 1517 apply: this contemplates a cost-bond on writ of error, and the Act of November 1st, 1871, refers to appeals, and not to writs of error.

If, then, we find the Act of November 1st, 1871, referring for its execution to other laws which can have no application, we are at a loss to know how the Act can be administered. This is a matter of too great public importance to be left to any uncertainty, or even to admit the courts to fix upon any rule of practice that could govern; and it is very doubtful whether any bond, where there is none provided for applicable to the case, could be made available.

In a case where the rights of the party against whom an appeal is taken are likely to be prejudiced by delay or otherwise, certainly he should have the benefit of a bond large enough to cover his losses.   A mere cost-bond might not be sufficient; and no judgment ascertaining debt or damages having been entered in the District Court, we are unable to see how such a case can be reached.

We hesitate, to consider well any judgment of ours which declares unconstitutional or void an Act of the Legislature, paying due deference to the learning and wisdom of that branch of the government.   But when we find ourselves totally unable to administer a law by reason of its uncertainty or ambiguity, or believe it to be unconstitutional, we shall not hesitate to discharge the duty which the law devolves upon us.

We do not mean to say, by any means, that the Act of November 1st, 1871, is unconstitutional, but we do say that it is nugatory and void for want of some adequate provision in the law to carry out its execution.   And, for the reasons given, the appeal in 1287 must also be dismissed.

Appeals dismissed.