JAMES WILLIAMS V. THE STATE.

*No. 892.   Decided March 10.*
*Motion for Rehearing Decided November 17.*
</div>

1.  **Accomplice Witness, Whether Accomplice or Not, a Question for the Jury, When—Charge.**—Where a witness' connection with the crime is an admitted fact, the court may charge that he is an accomplice and should be corroborated.   If, however, there is a question about it, then it should be left to the jury to. say whether the witness is an accomplice.   Following Zollicoffer v. The State, 16 Texas Crim. App., 317.

⸱2.  **New Trial—Jury Reading Newspaper Account of Trial—Verdict.**—On a trial for murder, where a new trial was sought on the ground that the jury, before verdict and while considering the case, had read accounts of the testimony adduced on the trial as published in the daily newspaper, and which report was complete and accurate, and nothing appeared in the paper in connection therewith prejudicial to defendant, *Held*, that when there is nothing in the newspaper statement of the evidence calculated in any way to affect the rights of defendant, while not proper to admit it to the jury, still it should not vitiate the verdict.   Such action on the part of the jury is not receiving additional evidence.

3.  **Same.—Alluding to Defendant's Failure to Testify.**—Where a newspaper report of the evidence in a murder trial stated in one of the headlines, "Defendant was not placed on the stand," and the same was read by the jury before verdict, *Held*, the statement quoted only stated a fact already known to the jury and could not affect the verdict; *Held*, further, that the statutory rule (Acts 21st Leg., p. 37) inhibiting counsel from alluding to defendant's failure to testify does not apply.

4.  **Same—Misconduct of Jury—Evidence as to Defendant's Attempt to Suicide.**—On a trial for murder, where the State offered to prove that after his arrest defendant attempted to suicide, which was promptly excluded by the court, and the jury instructed to disregard the matter, but it further appeared that the matter was again referred to and stated to. be true in the jury room, whereupon the foreman warned the jury they must not consider it, as it was not in evidence, and all the jury agreed that it should not be considered, *Held*, no ground for new trial, as it was not shown that the jury was influenced by the statement.

5.  **Conflicting Evidence—Province of Jury.**—Where evidence is conflicting it is peculiarly the province of the jury to pass upon and decide the question of conflict.

<div align="center">

ON MOTION FOR REHEARING.
</div>

6.  **Modification of Original Opinion as to Statement With Regard to Defendant's Attempted Suicide.**—See this opinion for modification and correction of the original opinion relative to procedure in the trial court relating to defendant's attempt at suicide.

APPEAL from the District Court of Hunt. Tried below before Hon. E. W. TERHUNE.

This appeal is from a conviction for murder of the first degree, with penalty assessed at a life term in the penitentiary.

The following concise statement of the material facts, testified to by the principal State's witness, Mrs. Humphreys, wife of the deceased, is taken from the brief of appellant, it being substantially correct:

Mrs. Lona Humphreys testified, that she was sleeping at home on the night of the 19th of May with her husband, Alvin Humphreys, in one room, and her children were sleeping in an adjoining room. She had three or four children, the oldest of whom was about ten years old. That about 11 o'clock that night defendant knocked on the door and called her, and at the same time said he wanted to get his coat and vest. Witness opened the door, whereupon defendant asked her to light the lamp. She proceeded to do this, and just as she lit the match and held it to the lamp she heard a racket, looked around, and saw the defendant strike her husband with an axe. She then ran out of the house "and just walked backwards and forwards from the corner of the house to a bois d'arc tree." In a little bit Williams came out, and she said, "Oh, Jim, you are a ruined man; what on earth possessed you to do that deed?" Defendant said to her, "It is what I care for you." He told me to hush and not to cry, that it would not bring him back; but that if I would tell a tale he had for me to tell everything would come out all right. He told me to tell that two strange men came there and called to stay all night; that my husband got up to let them in, and as he struck a light one of them said, "There he is," and the other began on him with an axe. He also said to tell that they were both good-sized men, and to go to Tom Poston's and tell this story. I told defendant two or three times to "Go! go!" I then went to Tom Poston's, who is my brother, and told this story. I would have been afraid to have told defendant that I did not want him to kill my husband. The witness stuck to this statement, repeating it to various parties, and never told that defendant killed her husband until the next day. The next day she told her brother and other parties that the defendant had killed her husband. This last statement was made at 8 or 9 o'clock, and witness says it might have been later. That it was first made to Tom Poston, her brother, in the field back of the house; that at that time a great many people were in her house; that they had been gathering in there all the morning, and at the time of the statement there were thirty or forty people in the house. She says the reason she did not tell who killed her husband was because she was afraid of the defendant; that defendant once intimated to her that he was going to kill her husband.

The other important facts are briefly summarized in the opinion of the court below. The defense was alibi; and further, that Mrs. Humphreys

herself, or some other person than defendant, committed the murder; and that if defendant did commit the murder, then that Mrs. Humphreys' evidence clearly showed that she was an accomplice, both in the fact that she was present at the time it was committed, and did aid and encourage the defendant in its commission, and also in the further fact that after its commission she endeavored to aid defendant in eluding arrest for said crime and escape arrest and punishment, by the tale she first told concerning the murder and the parties committing it.

The charge of the court submitted the law of accomplice testimony covering these phases, and also submitted to the jury the question of fact as to whether Mrs. Humphreys, under the evidence and the law as given in charge, was an accomplice. In this connection the court also gave the following requested instruction asked by defendant, viz: "If the jury believe from the evidence that Lona Humphreys, one of the prosecuting witnesses in this case, was present when her husband was killed, and that she then encouraged, by words or gestures or acts, some one else to commit the crime of killing her husband, or if the jury believe that said witness was present when her husband was killed, and subsequently made a false statement, through fear or any other motive, as to who the guilty perpetrator of the act was, and that said false statement was reasonably calculated to assist the perpetrator in evading the law, then and in that event the said Lona Humphreys would be an accomplice."

The court refused the following requested instruction of defendant: "The jury are charged that Mrs. Lona Humphreys, one of the prosecuting witnesses in this case, is an accomplice, and before you can convict the defendant, you must believe beyond a reasonable doubt that her testimony is corroborated by other evidence than her own tending to connect the defendant with the commission of the act charged in the indictment."

The court's indorsement of its refusal of this instruction is as follows: "Refused, because it is an issue of fact for the jury to determine whether or not Mrs. Humphreys is an accomplice."

Two of the principal grounds urged by defendant in his motion for a new trial related to and charged misconduct on the jury after the case had been submitted to them and whilst they were in retirement considering of their verdict. One was, that the jury had obtained and read the city daily papers, which gave account and reports of the trial and the evidence in the case, and the headlines of one of the articles in one of the papers which purported to give the proceedings of the trial stated, that "the defendant was not placed on the stand." These newspaper articles as read by the jury are copied in full in the record, and as far as the evidence is concerned seem to be an exact stenographic copy of the testimony as given at the trial, and did not appear to contain editorially or otherwise any expression of opinion as

to the guilt or innocence of the defendant, and counter-affidavits of several jurors were filed by the State to the effect "that the reading of said newspapers had no bearing or influence whatever on the verdict of the jury as rendered." The other matter complained of in motion for new trial is thus stated in the affidavit of the juror R. S. Bass, filed by defendant in support of said ground of the motion, to wit: "Affiant further says, that during the deliberation of said jury, and before a verdict was reached by the jury, the following statements were made, to wit: After nine of the jury had agreed on the verdict that was rendered by them, the following conversation ensued, in substance as follows: One of the jury said, 'How about that knife they tried to introduce?' Another one of the jury remarked, 'He tried to kill himself with a knife.' Then I said immediately, 'Yes, I heard when he was brought to town he had a rag around his neck; but, fellows, we must not consider this, as it was not introduced in the testimony.' Mr. J. W. Little, as foreman, repeated my statement and said that that thing must not be considered, and it was so agreed upon with all the jury, and it was never mentioned any more, and I do not believe that the above conversation had any bearing whatever upon the verdict as it was rendered."

The case on appeal came on for hearing at the Dallas Term, 1894, and the judgment was affirmed in the opinion below of March 10, 1894. A motion for rehearing was filed and subsequently transferred to the Tyler branch, where it was overruled in the second opinion below of November 17, 1894.

*M. M. Brooks*, for appellant.—The court erred in refusing to give defendant's special instruction which told the jury directly in effect that Mrs. Humphreys was an accomplice. Where a party, knowing the unlawful intent with which an act is being done, and is present, aiding, advising, or assisting the guilty perpetrator, or if, being present, a party acquiesces in an unlawful act, and subsequently to the commission of the act, after being present, a party persistently refuses to tell who the guilty perpetrator was, thereby increasing the perpetrator's chances of escape from arrest and punishment, said party by said acts is an accomplice or an accessory in law, and it is the duty of the court to charge as a matter of law that he is such accomplice or accessory. Penal Code, art. 76; Blakely's case, 24 Texas Crim. App., 616; Bean's case, 17 Texas Crim. App., 60; Williams & Smith's case, 42 Texas, 392; Barrara's case, 42 Texas, 264; Allen v. The State, 10 Ohio St., 287; 1 Greenl. on Ev., sec. 380; Puryear's case, 28 Texas Crim. App., 73.

The court erred in refusing to give defendant a new trial, because there is no evidence to support the testimony of Mrs. Lona Humphreys, who is shown to be an accomplice, and nothing corroborating same. Smith's case, 27 Texas Crim. App., 196; Stouard's case, 27 Texas Crim.

App., 1; Stone v. The State, 22 Texas Crim. App., 185; Dodson's case, 24 Texas Crim. App., 514; Davis' case, 2 Texas Crim. App., 588; Chumley's case, 28 Texas Crim. App., 87.

The court erred in refusing to give the defendant a new trial, because the jury read the Greenville daily newspapers which contained incomplete and incorrect accounts of the testimony that was adduced upon the trial.

The Federal and State Constitutions guarantee to a defendant a free, full, fair, and impartial trial, with the right of being confronted with witnesses against him; and yet in the face of these beneficent provisions, we have in this case a jury considering as evidence sensational reports and synopses of the evidence as adduced by the witnesses who confronted the defendant. In the case of Richardson v. The State, 28 Texas Crim. App., 216, Judge White, in delivering the opinion of the court, expresses a righteous contempt of the conduct of the trial judge in making a peripatetic pilgrimage around the streets in search of testimony to support the act of overruling a motion for a continuance. In this case we have the jury resorting to the same wholesome expedient to strengthen the verdict that they contemplate rendering. We have the jury considering as evidence two copies of a newspaper that could have but one tendency, and that is to prejudice their minds against the rights of the defendant. The headlines of one of the newspapers contain among other things this statement, "The defendant was not placed on the stand." This court has uniformly held that a bare allusion by a prosecuting attorney to the fact of a defendant not testifying compels this court to reverse the case. Then I ask, in all seriousness, can it possibly be less reprehensible for a newspaper to be introduced into the deliberations of a jury when the headlines of the same announce the fact that the defendant did not testify? Is it less calculated to prejudice his rights? All of this certainly indicates that the defendant has not had a trial at all upon the testimony sworn in the courts of the country, but his life has been the childish plaything of the moment. Walker's case, 37 Texas, 366; Hunnicutt's case, 18 Texas Crim. App., 523; Defriend's case, 22 Texas Crim. App., 570; McCoy's case, 71 Cal., 395; Carter's case, 9 Lea (Green.), 440; Richardson's case, 28 Texas Crim. App., 216. On the statement that defendant failed to testify, see Hunt's case, 28 Texas Crim. App., 149.

The court erred in refusing to give a new trial, because the jury discussed matters and facts that had never been proved on the trial and that could not legally be proved.

If the defendant ever attempted to kill himself it was while he was under arrest, and the court very promptly would sustain exception to the introduction of such testimony. This court has repeatedly held, that any act of a defendant while under arrest which indicates guilt is as equally inadmissible as statements made by defendant under same

circumstances, and the record in this case shows that the defendant had been under arrest and in prison ever since he was accused of this crime. Then if said testimony could not be introduced in the courts of the country, is it less wrong for a jury to discuss it? Can this court say it did not influence the action of the jury? Under the facts of this case Mrs. Humphreys, as above stated, is an accomplice and accessory, and here we have a jury considering as a fact a statement which goes to corroborate her testimony, when such statement could not be proved in court. Only nine of the jury had agreed to the verdict that was rendered at the time this matter was discussed. The record does not disclose who the three jurors were who had failed to agree to such verdict. Then is not the conclusion irresistible that it did influence the other three in forming their verdict, as they had stoutly held out until after said statement? This court has held under similar circumstances that the fact that a juror swears that such statements did not influence him in finding a verdict is of no avail in the face of the fact that such statements probably did influence him. Washburn's case, 31 Texas Crim. Rep., 352, and authorities there cited; Warren's case, 9 Texas Crim. App., 620; Ogle's case, 16 Texas Crim. App., 361; Wright's case, 17 Texas Crim. App., 152; Nolan's case, 14 Texas Crim. App., 479; Fulcher's case, 28 Texas Crim. App., 465.

*R. L. Henry*, Assistant Attorney-General, for the State.—1. Appellant contends that the court should have affirmatively charged that Mrs. Lona Humphreys was an accomplice to the murder. The State submits that the court was correct in leaving this issue of fact to be determined by the jury. The evidence does not show that Mrs. Humphreys did or said anything before, at the time of, or after the killing, to aid Williams in the crime. She said or did nothing to aid him to escape. This much is evident, that no person could say that Mrs. Humphreys took part in the murder, beyond any doubt. Then this question, being in doubt, should have been left to the jury. Indeed, our statutes contemplate that all questions of fact, whether disputed or not, should be left to the jury. Zollicoffer v. The State, 16 Texas Crim. App., 312; White v. The State, 30 Texas Crim. App., 652; Barrara v. The State, 42 Texas, 260; Williams v. The State, 42 Texas, 392. Articles 676 and 728 of the Code of Criminal Procedure make the jury exclusive judges of the facts.

2. Appellant contends that there is no evidence to support the testimony of Mrs. Humphreys, an alleged accomplice. The evidence is voluminous, and it is not convenient to quote it at length here. But the State submits, that a careful perusal of the record will disclose ample evidence for that purpose. The following facts alone are sufficient: (1) What the witness Teague heard the witness Smith say in Kaufman County; (2) what defendant said to the witness Poston; (3)

the tracks and identity thereof; (4) the fact that appellant had reason to be jealous of deceased; (5) the blood on appellant.

3. Appellant contends that the case should be reversed because the jury read the daily newspaper. This position is not tenable, because appellant does not show that the accounts of the trial were incomplete or incorrect. On the other hand, the exhibit shows them to be correct. He does not show that he was injured, or that the jury were influenced; but the jury show they were not, and the facts of the case show that they could not have been.

In such cases it should be made to clearly appear that a party is injured in some material right. It is not so in this case. The affidavit of the juror J. W. Little clearly shows that reading the papers did not in the least influence the verdict. Walker v. The State, 37 Texas, 389; Hendricks v. The State, 28 Texas Crim. App., 416; Willson's Crim. Stats., sec. 2545, and authorities; 2 Thomp. on Trials, sec. 2561; Bullinger v. The People, 95 Ill., 394; Farrar v. The State, 2 Ohio St., 54, 79; United States v. Reid, 12 How., 361; Am. and Eng. Encyc. of Law, 373, and authorities; Ashton v. The State, 31 Texas Crim. Rep., 479; Willson's Crim. Stats., 2281, subdiv. 13.

Complaint is made that the jury were influenced by a reference to the fact that appellant tried to cut his throat, and that this fact was mentioned by a juror in the jury room. It does not appear that the jury were thereby influenced, but it does affirmatively appear that they were uninfluenced. Furthermore, the record shows that when there was an offer to prove such fact of attempted cutting the court promptly excluded the evidence, instructed the jury to disregard it, and thereby eliminated this matter from the case. Miller v. The State, 31 Texas Crim. Rep., 636; Thomp. on Trials, secs. 715, 722, 723, and notes.

The evidence, coming from the jury room in the shape of an affidavit of a juror, shows that the jury did not consider this matter, and hence appellant's rights were not affected. Bruce v. The State, 31 Texas Crim. Rep., 592; Handline v. The State, 6 Texas Crim. App., 347; Cordova v. The State, 6 Texas Crim. App., 207; Langford v. The State, 9 Texas Crim. App., 284.

These are the only points necessary to be considered. The record discloses a diabolical murder by appellant, to which the death penalty should have been affixed. The injustice in the trial is to the State.

SIMKINS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at imprisonment for life.

1. Appellant contends, that the court erred in refusing to charge that Mrs. Lona Humphreys was an accomplice to the murder of her husband. The evidence shows that no one was present at the murder of her husband but appellant and Mrs. Humphreys; that after the

homicide Mrs. Humphreys went one-half mile to her brother's house and told him that two strange men had come into the house and killed him with the axe.    Mrs. Humphreys said she made this statement because she was afraid of appellant, and believed that he was close by to hear what she said; that he told her what to say, and she feared to make any other statement until she could get to the officers of the law. If the criminal connection with the unlawful act is an admitted fact, the court may charge that the party so connected is an accomplice, and should be corroborated.    If, however, there is any question about it, then it should be left to the jury to say whether the witness is an accomplice.    In Zollicoffer's case, 16 Texas Criminal Appeals, 317, where it was contended that the court should have directly charged the jury that the witness Green was an accomplice, the evidence being so conclusive of that fact, the court says:    "Whilst it would not, under some facts, be improper for the court in its charge to assume and instruct the jury that the witness is an accomplice, still we do not think it is error to submit the question to the jury."    White's case, 30 Texas Crim. App., 657; Freeman's case, 11 Texas Crim. App., 92; Elizando's case, 31 Texas Crim. Rep., 237.    The charge fully instructed the jury on this question, and the court did not err in refusing the requested charges.

2. Appellant further contends, that the court below erred in not granting a new trial upon the ground that the jury read the daily newspapers, which contained incorrect accounts of the testimony adduced on the trial.    This ground of the motion was sustained by the affidavit of John Baker, one of the jurors, who states that he saw two of the jurors reading the page of the Daily Greenville Herald containing a synopsis of the evidence adduced on the trial.    This was after the evidence had gone to the jury, and before they had rendered a verdict.    The evidence as reported in the newspaper is copied in the transcript, and, after a careful comparison with the agreed testimony, we are unable to appreciate the objection that the newspaper report of the evidence was incomplete or inaccurate, nor has counsel in his brief pointed out any inaccuracy.    So far as we are able to gather from the transcript, there is nothing in the report, nor in the paper itself, which in the slightest degree indicated the drift of public opinion as to appellant's guilt or innocence, nor is any prejudice or bias for or against appellant shown in any comment therein, and it contained no fact that was not introduced in the evidence on the trial. While it is true that where a newspaper contains prejudicial reports of the trial, or comments on the case or the persons or character of those connected therewith (Walker's case, 37 Texas, 389), or where it contains matter calculated to influence the verdict (People v. Murray, 24 Pac. Rep., 666), the verdict should be set aside; yet when there is nothing in the newspaper statement of the evidence calculated in any

way to affect the rights of defendant, while it is not proper to admit it to the jury, still it should not vitiate the verdict. United States v. Reid, 12 How., 366; State v. Cucuel, 31 N. J. Law, 263; 12 Am. and Eng. Encyc. of Law, 373. It is not receiving additional evidence. Penal Code, art. 777; Willson's Crim. Stats., sec. 2545. Nor does the fact that one of the headlines of the report states that "defendant was not placed on the stand" render the reading of the report by the two jurors fatal to the verdict. It merely stated a fact already known to the jury. The inhibition upon counsel in the case alluding to defendant's failure to testify is statutory (Acts 21st Leg., 37), and it is for that reason we reverse cases where the statute is violated, even though the error was harmless.

3. Appellant further complains, that the jury were probably influenced by the fact that appellant after his arrest attempted to commit suicide by cutting his throat, and that the matter was referred to in the jury room. The record shows that the State offered to prove this fact, but it was promptly excluded by the court, who instructed the jury to disregard the matter; that after the jury retired the matter was again referred to and stated to be true, when the foreman warned the jury that they must not consider the matter, as it was not introduced in testimony, and all the jury agreed that it should not be considered. We think that the record fails to show that the jury were influenced by the statement. On the contrary, the affidavit of a juror who stated the facts further states he did not believe the jury were influenced thereby, and this is corroborated by the affidavit of the foreman.

4. The evidence in the case was peculiarly a question for the jury. If Mrs. Humphreys, the principal witness for the State, is to be believed, appellant was guilty of a fearful murder. If the witnesses for the defense are to be believed, appellant was at the time of the murder lying ill at his brother's house, one and a half miles away, and is innocent, and Mrs. Humphreys herself is the guilty party. The motive for killing Humphreys was very strong on the part of appellant. Humphreys had abandoned his wife some three years before, and appellant shortly after went to live with her and carried on the farm. A suit for divorce was pending, brought by Mrs. Humphreys against her absent husband, and she promised to marry appellant. Suddenly Humphreys made his appearance and begged to be taken back. After two months' probation she agreed to take him back. This determination, as disclosed by the record, seems to have much affected appellant. He spoke of selling out and leaving the country, saying he was now foot-loose and out of a job, and the night before the homicide spoke so bitterly of the deceased, and seemed so restless, that a witness at whose house he was begged him not to have a difficulty with deceased. But he insisted on returning

"home" (to Mrs. Humphreys') that night. On Friday evening he left Mrs. Humphreys' to go to his brother's, who lived one and a half miles off, and returned at 11 o'clock and called to her to open the door, which she did. He said he wanted to get his coat and vest, which he had left there, and requested her to light a lamp. As she did so she heard a noise and saw appellant strike her husband in the head with an axe. The other corroborating facts are not many. The tracks along the road, which are identified as appellant's, show that he had recently gone twice in the direction of his brother's house, which corroborated Mrs. Humphreys' evidence that he went to his brother's house the evening before and returned at midnight to commit the homicide and then went back to his brother's, where he was arrested next morning. The spots of blood found on appellant are explained by his family as being caused by nose-bleeding; but if disbelieved on the question of alibi, their explanation was also probably rejected by the jury. As stated, this was peculiarly a question to be settled by the jury. They rejected the appellant's defense of alibi, and the evidence sustains the verdict.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.

### ON MOTION FOR REHEARING.

SIMKINS, JUDGE.—We have carefully examined the motion for a rehearing in the light of the brief and oral argument of able counsel representing appellant, but can see no sufficient reason for changing the conclusions heretofore reached in the case. We desire, however, to modify the statement in the opinion that the State offered to prove that the defendant attempted suicide. It seems that the State only offered to prove that a knife was given to defendant, but the court promptly excluded the testimony and thereby prevented any further investigation in that line. But this was immaterial. The question to be considered was whether the discussion in the jury room of the attempted suicide operated injuriously to appellant's rights, and for the reasons stated in the opinion we held not.

The motion is overruled.

*Motion for rehearing overruled.*

Judges all present and concurring.