W. I. GLASS v. THE STATE.

No. 21702.  Delivered October 29, 1941.
Rehearing Denied January 7, 1942.

The opinion states the case.

*B. F. Word,* of Meridian, and *Penn J. Jackson* and *John A. James, Jr.,* both of Cleburne, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the murder of Ray Gilbreath, and upon his trial he was awarded a penalty of five years in the penitentiary for murder with malice.

The facts show that appellant and the deceased had engaged in some prior difficulties over matters that were of such small import that they must have occurred while both participants were to some extent at least under the influence of intoxicating liquor. After the last and most serious difficulty appellant and deceased seemed to have shaken hands and agreed to forget about it as "just a little drunken fight." There were other encounters between the two, but nothing more serious than the "drunken fight."

On the night of the killing, on February 8, 1941, appellant had been to a lodge meeting in the little town of Eulogy, and after the lodge adjourned he and two companions decided to go down to a dine and dance hall for the purpose of seeking for a drink of whisky. They were unable to obtain such drink, but as appellant and his companions entered the dine and drink place he saw the deceased sitting on a stool near the wall, and he claimed the deceased called for him to " 'Come here, Mr. Glass, come here,' and he did this way (illustrating)." Whereupon appellant sprang outside the door, got his pistol out of his pocket, and coming back shot twice through the open door, each shot taking effect in the body of the deceased, from which he immediately died. We quote appellant's version of the encounter that resulted in the death of Ray Gilbreath:

"Something was said about getting a little drink somewhere, and we went down there to this Miss Burns' joint. We went to see if we could get a drink of whiskey. P. K. Robinson, Houston Wheeler and myself went down there. When I went in I passed through the door and there was a stove up in front and I walked up that way. As I passed Ray Gilbreath says 'Hello there Mr. Glass.' I didn't speak to him. I didn't feel myself very comfortable and I thought I would go home, and as I turned around and walked back, he says 'Come here, Mr. Glass, come here Mr. Glass' and he did this way. (demonstrates) I got in a hurry. I sprang out of the door. My gun was in my hip pocket. I jerked it out of my pocket and I sprang back firing. I fired two shots. I stood there and watched him topple slowly over. I watched him until his head hit the ground and then I walked out of the door slowly and left. In a short time Verna Burns was crying 'Uncle Ray.' Then I walked on toward Bud Hudson's filling station. Mr. Whitt was the only one that came and followed on behind. I walked up the way slowly and turned around to see if I had been followed. I recognized Mr. Whitt following me. I walked on up to Bud Hudson's store, made myself comfortable and waited for the law to come.

"I shot Ray Gilbreath because I was afraid of him when he was making the motion. I knew he could catch me anywhere and that he could out run me. He came might near to beating me to death. I was afraid he would beat me up or he could have shot me I couldn't tell whether he had a gun. I thought he was a fool for not killing me when he came so near it. I did not go down there to kill, and if he had left me alone I would not have killed him, but I had been abused until my

honor was at stake, as well as my life. I knew. my life was in danger at that time."

Bill of Exceptions No. 1 complains of the trial court overruling appellant's motion for a continuance which was asked in order to procure the attendance of Mrs. Lurtie Glass, who was sick. and unable to attend court at the time of the trial. There had been a motion for a continuance or postponement of this trial previously granted by the court some week or so prior thereto in order to obtain the presence of another witness, and this motion would therefore be a second motion for a continuance. See Griffith v. State, 138 S. W. 1016; Brannan v. State, 1 S. W. (2d) 279.

The court heard testimony relative to this motion, and there was introduced therein the sworn testimony of this desired witness at the examining trial of appellant before a justice of the peace, in which she testified that she did not know of any threats that the deceased had made against appellant; that she didn't know they were going to have any trouble at any time before the shooting; didn't know there was any trouble brewing; that she never did hear appellant mention the name of the deceased after the fight he had had with the deceased. The witness seemed not to have known of any threats made by either party to the shooting, nor of any of their transactions just prior thereto. The testimony that the appellant claimed he expected to elicit from the witness related to an occurrence some few weeks before the fatal shooting of the deceased, and was to the effect that the deceased on a certain morning had passed in front of the home of appellant four or five times, looking towards appellant's house, and finally perceiving appellant out in a pasture working on a fence, the deceased began cursing appellant and invited him out into the road for the purpose of fighting him, whereupon appellant ran away from the deceased in order to save his life, and came into the house, greatly alarmed and excited, and informed the witness of the above transaction.

Upon the hearing of the motion for a new trial it developed that the desired witness merely saw the deceased passing on the road in front of appellant's home some few times, looking towards such home, and soon thereafter appellant appeared in the house in a scared and nervous condition, and made a statement to her relative to what occurred between himself and the deceased out in the pasture a few moments before.

It is evident from the affidavit of the absent witness, filed with the motion for a new trial, that the witness' testimony was not as full nor as material as the allegations set forth in the motion for a continuance. The affidavit merely states that she saw the deceased driving four or five times in front of appellant's home looking towards the same, and that soon there-afterwards appellant appeared in a highly nervous and excited condition and related to her his version of what had occurred out in the pasture some moments before. The witness seemed not to have seen any encounter between such parties, and could only repeat that which appellant had told her. It will be noted that appellant himself testified fully while on the witness stand relative to such occurrence, and probably would have made this absent witness' testimony material had such witness seen such encounter; but we are of the opinion that the statement made to the absent witness by appellant, after the occurrence as to what took place between himself and the deceased, would clearly be hearsay and a self-serving declaration. Possibly if the matters relative to this encounter in the pasture were being tried, such a statement might have reached the dignity of a res gestae declaration, but it is to be borne in mind that such statement was made some weeks prior to this killing, and therefore could not be called the homicide transaction itself speaking. The trial court doubtless exercised his discretion in the light of the testimony given by the absent witness at the examining trial, and we think he was correct in his ruling.

Appellant's Bill of Exceptions No. 2 relates to a matter that occurred during the cross-examination of appellant while testifying in his own behalf. He was asked by the State: "Mr. Glass, have you ever been convicted and sent to the Federal penitentiary?" to which question the appellant immediately answered "Yes" before his attorneys had time to interpose an objection to such question. Such attorneys did, however, interpose an objection thereto, and upon the jury being retired, it was ascertained that such conviction was for a violation of the liquor laws, and took place in the year 1931, and he served about nine months in such prison, and was released in the year 1932 and he had not been indicted nor convicted for any further offense since said date. The careful trial court then instructed the jury to disregard such question and answer thereto; but appellant brings his bill of exceptions relative to such matters and insists that the trial court should have declared a mistrial on account of such proceedings. We are not impressed with appellant's insistence. The appellant answered

such question so readily and quickly that his own viligant attorneys did not have time to object prior to his admission of such conviction, and the trial court promptly sustained such objection upon a proper showing of the date of such conviction. We do not think the State should thus be penalized by the readiness of appellant in admitting a matter before sufficient time had been given for a proper objection. If there was error herein, appellant himself was the cause of its commission, and he should not now be heard to take advantage of his own wrong. We think, if error, that the trial court's prompt instruction cured the same. See Chandler v. State, 281 S. W. 568; Ross v. State, 29 S. W. (2d) 381.

By Bill of Exceptions No. 3 it is alleged that the jury were guilty of misconduct in their deliberations in that they received other testimony therein than was taken in the trial of the case in this: "That someone in the jury room mentioned the fact that appellant had been to the penitentiary in connection with some kind of a liquor case or something." This was before a verdict had been agreed upon. It is shown, however, by the testimony of the only juror used on such matter that some one spoke up and said that they were not trying him for that, and that same was not again referred to during their deliberations. The gist of such testimony is given in the following quotation from the juror's testimony, which he said did not influence him in any way:

"I doubt if all of the members of the jury heard the remark about Glass having been sent to the penitentiary. It was just mentioned and it wasn't mentioned especially before the whole bunch. Just somebody started to bring up something that wasn't in the evidence and they just stopped him right there before he got through. He just said that much and somebody said that had nothing to do with it and he just stopped and started bringing up some of the other evidence. I don't think all of the jurors heard it."

We do not think that every casual reference made in the jury room relative to a temporary residence in the penitentiary, and especially so when such reference is immediately suppressed and no further mention nor consideration thereof shown, evidences a material error. It is said in 42 Tex. Jur., p. 395, that:

"While misconduct in certain respects is without qualification declared (Code Crim. Proc., art. 753, subd. 7) to be ground for a new trial, generally it is such ground only where the

court is of the opinion that the defendant has not received a fair and impartial trial. Under this rule the question as to the effect of the misconduct is addressed to the discretion of the trial court, whose denial of a new trial, although reviewable, will not be set aside unless an abuse of discretion is apparent."

We do not think such a casual reference, immediately suppressed, could have caused appellant not to have had a fair and impartial trial, and we do not feel disposed to hold that the trial court abused his discretion in his ruling thereon. This bill is therefore overruled. See Perkins v. State, 46 S. W. (2d) 672; Taylor v. State, 274 S. W. 622; McGee v. State, 51 S. W. (2d) 714.

We do not think any error is presented, and the judgment is therefore affirmed.

### ON MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that no discretion is lodged in a trial court to determine injury where the jury has received new and other testimony during its deliberations, within the meaning of Sec. 7 of Art. 753, C. C. P., and that, when a violation of such statute is shown, the granting of a new trial is mandatory. While such is the general rule, yet there are exceptions, as are pointed out in the authorities cited in our original opinion. However, another very good reason exists why the matter as here presented does not come within the meaning of the statute mentioned and does not constitute the receipt by the jury of new and other testimony, and that is that the reference made by the jury to the fact that appellant had previously been convicted of a liquor charge and had served a term in the penitentiary was not first made known to the jurors by the reference thereto in the jury room. To the contrary, the appellant had admitted such fact, and so testified thereto, upon cross-examination. It is true that, upon objection of his counsel to proof of such fact, the objection was sustained and the jury instructed to disregard the same. So, the reference thereto in the jury room was not to a matter or of a fact of which the jury did not have previous knowledge or did not already know. Under such circumstances, the reference made in the jury room was not, to the jurors, other testimony, or was not new to them.

In Williams v. State, 33 Tex. Cr. R. 128, 25 S. W. 629, members of the jury, during their deliberations of the case, read a

newspaper carrying a statement or synopsis of the evidence adduced on the trial. This was held not to be new and other testimony within the meaning of the statute mentioned, because such newspaper article "contained no fact that was not introduced in the evidence on the trial," and, therefore, was nothing more or less than a statement of the facts which were already known to the jury.

We think the rule is applicable and controlling here, because, in the instant case, the statement in the jury room was relative to a matter which all the jurors had heard as evidence in the case, although withdrawn from their consideration. The withdrawal of such testimony could take it from the jurors' consideration, but it could not blot out of their minds the fact that they had heard the same before it was mentioned in the jury room.

So, the test here to be applied is not that which relates to the receipt by the jury of new testimony during its deliberations, but whether the facts show misconduct of the jurors generally by their disregard of the trial court's instruction withdrawing from their consideration the facts referred to.

In such cases, the rule of probable injury is to be applied and the matter determined in the light of an abuse by the trial court of his discretion in overruling the motion for new trial. In view of the prompt suppression of the matter in the jury room, and in the light of the facts as a whole, we are unable to reach the conclusion that appellant was prejudiced in the matter. We adhere to the conclusions expressed in the original opinion.

We are not unmindful of the fact that the holding in the Williams case, above referred to, was overruled in Hambright v. State, 84 S. W. 597, 47 Tex. Cr. R. 518. However, a careful examination of the statements made in the jury room in the two cases shows them to be materially different, for that in the Hambright case, supra, was clearly new testimony relating to a disputed issue in the case, and was not otherwise before or known to the jurors other than by the statement made by a member of the jury during its deliberations. As we have pointed out, such was not true in the Williams case, supra. Believing that the Williams case announces a correct rule, the holding in the Hambright case, in so far as it overrules the Williams case, is hereby overruled.

Appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.