MATTER OF PETITION TO OPEN AND WIDEN WILLIS AVENUE.

APPEALS OF AMOS AND EMILY S. CHAFFEE.

*Streets—Condemnation of lands—Widening streets.*

1. Act 281 of 1883 " to provide for the taking of private property for the
   public use, and for the opening of streets and alleys by the city of
   Detroit " may properly include under this title provisions for filing
   a petition for the condemnation of land for that purpose.

2. An act which authorizes a municipal body to open and *widen* streets
   according to the procedure therein prescribed, and then prescribes no
   procedure for cases of widening streets is to that extent inoperative.
   Act 281 of 1883.

3. A jury in condemnation proceedings cannot follow its judgment as to
   value in opposition to testimony.

4. The owner of land condemned for a street is entitled to its full market
   value, and any testimony is objectionable that tends only to show
   its value for specific purposes or to show that it was transferred by
   a former owner for the purpose of speculating upon the street open-
   ing.

5. Where a statute authorizing the condemnation of land for street pur-
   poses permits the jury to practically ignore the local assessment dis-
   trict by assessing " benefits " in such a way as to impose upon some
   of the inhabitants greater proportional burdens than others bear, or
   to relieve some from all assessment whatever, it is invalid as contra-
   vening the constitutional principles of taxation.

Appeal from the Recorder's Court of Detroit.  (Swift, J.)
January 14.—April 9.

PROCEEDINGS to open and widen a street.  Respondents
Chaffee appeal.  Dismissed.

*Wilkinson & Post* and *Otto Kirchner* for appellants.  A
jury in condemnation proceedings cannot substitute their

own impressions as to value for the evidence: *Heady v. Vevay &c. Turnpike Co.* 52 Ind. 124; *Jeffersonville &c. R. R. v. Bowen* 40 Ind. 547; *Close v. Samm* 27 Ia. 508.

*Henry M. Duffield* and *John B. Corliss* for appellees.

SHERWOOD, J. This is a proceeding taken under the statute providing for opening streets and alleys in the city of Detroit. Loc. Act 281 of 1883, p. 452. Willis avenue crosses Woodward avenue, in said city, nearly at right angles; and between Woodward avenue and the west line of the Brush farm (its eastern terminus when these proceedings were commenced) was but fifty feet wide. This proceeding was taken on the part of the city to increase the width of Willis avenue to one hundred feet by taking a strip fifty feet wide off from the north side of Park Lot 28 for that purpose. The land sought to be taken lies on the south side of the avenue and is owned by the defendant Emily Chaffee, and extends the full length of the proposed improvement. It does not appear that she owned any other lands in the city. On the opposite side of the avenue the land is platted into lots, many of which are well improved and quite valuable.

The provisions of the statute applicable to the case, and under which the proceedings to condemn the land were had, are as follows:

Section 1. *The People of the State of Michigan enact* That the common council of the city of Detroit is hereby authorized to open, extend, widen, or straighten streets and alleys in said city for the public use and benefit, and to take private property therefor, and institute and prosecute proceedings for that purpose, in accordance with the provisions of this act.

Sec. 2. Whenever the common council of the city of Detroit shall deem it necessary for the use and benefit of the public to make any such improvement, and to take private property, therfore, said council shall by resolution so declare, and also describe such property, and designate the purpose for which it is to be taken, and fix and describe a special taxing district, embracing only the taxable real estate which in the opinion of said council will be benefited by such improvement. Said resolution shall direct the city attorney to insti-

tute proceedings in the Recorder's Court of said city to carry out the objects of such resolution..

Sec. 3. Upon the passage by the common council of such resolution, it shall be the duty of the city attorney to prepare and file, in the name of the city, in the Recorder's Court of said city, a petition signed in the name of the city by the city attorney in his official capacity, which shall allege the passage of, and have annexed thereto, a certified copy of said resolution ; shall describe all the lots, tracts and parcels of private property proposed to be taken or assessed, and set forth the names of the owners, occupants, mortgagees, lessees, and others interested in such lots, tracts and parcels, respectively, as far as the same can be ascertained, and shall allege that it is necessary to take such property for the public use and benefit ; and pray that a jury may be impaneled to determine whether it is necessary to make such improvement, and to take such property for the public purpose therein stated, and to ascertain and fix the just compensation to be paid therefor, and to assess and apportion one-half of the compensation awarded in the case of the opening of streets, and the whole amount of the compensation awarded in the case of alley openings, upon such portion of the real estate within the assessment district as may be benefited by such improvement. The petition may pray for any other or further relief deemed necessary within the objects of this act.

Sec. 4. One-half of the damages and compensation awarded by the jury, and all the expenses of opening, extending, widening, or straightening streets, and all the expenses of opening, extending, widening, or straightening alleys, shall be paid by the city and raised by a general tax to be levied and collected according to the provisions of the charter of the city.

Section 11 of the act provides that when such jury is impaneled they are to "hear the proof and allegations of the parties and the arguments of counsel, and if so ordered by the court shall go to the place of the intended improvement in charge of an officer, and upon or as near as practicable to any property proposed to be taken or assessed, and examine the premises. They shall be instructed as to their duties and the law of the case by the court, and shall retire under the charge of an officer and render their verdict in the same manner as on the trial of any ordinary civil case."

By section 12 it is provided that " The jury shall determine

in their verdict the public necessity for the proposed improvement and for taking such private property for the use or benefit of the public for such proposed improvement, and in case they find that such necessity exists they shall award to the owners of said property such compensation therefor as they shall deem just, and in determining the amount of said damages, where only a part of a lot or lots of land is taken, the jury shall take into consideration the amount of benefits, if any, which the portion not taken will receive from the intended improvement, but it shall not be necessary for them to state in their report the damages separately, but only the net amount of damages, and shall assess and apportion, in the case of alleys, the whole amount of the compensation, and in the case of street openings one-half of the compensation to be paid for the private property taken upon such lots and parcels and subdivisions of real estate within the assessment district fixed by the common council, as will be, in the opinion of said jury, benefited by the improvement, in proportion, as nearly as may be, to the benefits they will receive: provided, that if any lot or parcel of land in the assessment district is not, in the opinion of said jury, actually benefited, it shall not be assessed."

The statute further provides that the verdict of the jury " may be set aside by the court and a new trial ordered, for objections of law and to matters of substance, but not for objections as to matters of form, in the same manner and on the same grounds as in ordinary civil actions in the circuit courts of this State." The verdict must be confirmed by the court, and from that time the amount assessed by the jury upon any parcel of land or lot becomes a lien thereon.

Section 16 provides that parties whose property is taken or assessed, if aggrieved, may appeal to this Court.

The title of the act containing the statute reads as follows: "An act to provide for the taking of private property for the public use, and for the opening of streets and alleys by the city of Detroit."

The respondents appeared in response to the summons to show cause why the prayer of the petition should not be

granted, and moved to quash the proceedings for the following reasons:

*First.* " For that the act under which the said petition is filed is unconstitutional, null and void for several reasons: (*a*) That part of the act under which the petition is filed is not within its title; (*b*) That the act authorizes the jury to apportion and assess such damages and compensation upon only such portion of the property within the assessment district as, in the opinion of the jury, is benefited by the proposed improvement, thus in effect destroying the assessment districts.,

*Second.* " For that said petition prays for a jury to assess, etc., upon the real estate within the assessment district, according to the benefit derived from the improvement, one-half of the amount of compensation awarded for the property taken, whereas the said act provides that said petition shall pray for a jury to assess and apportion one-half of the compensation awarded, etc., upon such portion of the real estate within the assessment district as may be benefited by said improvement."

*Third.* " For that it appears by said petition and the plat annexed thereto that so much of said proposed improvement as lies between the westerly line of the Brush farm and John R. street will not, if made as proposed, constitute a public highway."

The court, after hearing counsel, overruled each of said several objections and denied said motion to quash.

The case was then tried in the Recorder's Court before the jury impaneled. The jury, by their verdict, found that it was necessary to widen the street as proposed, " for the public use and benefit," and for that purpose it was necessary to take Mrs. Chaffee's land, and awarded to her, for her compensation and damages, $5000. The jury also apportioned the assessment of the $5000 thus awarded to Mrs. Chaffee in the assessment district as follows: $2500 to be paid by the city; $2400 against the property of her husband lying south of and adjoining the lands condemned, being lot 28 before mentioned; and the remaining $100 they assessed against twenty lots on the north side of Willis avenue, opposite the property taken,—the assessment being five dollars upon each lot. The verdict was confirmed by the Recorder, against the

objection of respondents.   The defendants each took a separate appeal to this Court.

The respondent's counsel claim that neither the provisions of the law under which the proceedings in this case were had nor the proceedings thereunder are within the title of the act.   We think the provisions of the act are sufficiently indicated by its title, under the decisions of this Court already made, and that the act is not objectionable upon that ground. *People v. Mahaney* 13 Mich. 481 ; *People v. State Ins. Co.* 19 Mich. 398 ; *People v. Hurlbut* 24 Mich. 44 ; *Kurtz v. People* 33 Mich. 282 ; *Stockle v. Silsbee* 41 Mich. 615.

There is much more to the point made by counsel for respondent that the proceedings are not within the scope and purview of the act.   It will be noticed that while the resolution of the board of aldermen—the board of councilmen concurring—declared a public necessity existed for opening and widening Willis avenue from Woodward avenue to the west line of the Brush farm, and the petition in the case asked for the opening and widening of the same, really the proceeding was only for widening the avenue : it having been previously opened fifty feet wide, and thus used for several years.   The case cannot, therefore, be considered as anything more than a proceeding for the widening of the avenue and condemnation of land for that purpose.

Section 12 of the act provides among other things that the jury "shall assess and apportion, in the case of alleys, the whole amount of the compensation, and in case of street openings one-half of the compensation to be paid for the private property taken upon such lots and parcels and subdivisions of real estate within the assessment district fixed by the common council as will be, in the opinion of said jury, benefited by the improvement, in proportion as nearly as may be, to the benefits they will receive."   It will be observed that by section 4 of the act, in case of opening a street, the city is required to pay one-half the damages and compensation awarded, by general tax, to be raised, levied, and collected as other city taxes.   It is also, in like manner, to pay all the expenses of opening, extending, widening or straightening streets and

alleys. This latter clause, of course, extends only to the expense incurred, other than the damages and compensation to be paid for land taken.

I do not find in any section of the act (and there alone it exists if at all) any provision for the assessment or payment of damages and compensation for land taken to widen or straighten a street or alley in the city of Detroit. It is true, the oath to be administered to the jury under section 11 requires them to make assessment of one-half the amount awarded, against property in the assessment district as established by the council; but they can make such assessment only in cases where the other provisions of the act authorize them to do it, and such authority should be express, and not left to doubtful implication. The first section of the act delegates the power to the city to take private property for the purpose of widening a street, and to take the proceedings for that purpose provided in the act; but through some oversight the necessary proceedings for that purpose do not seem to have been provided. The right, therefore, to take property to widen a street is not available.

The right to take private property by the public, even when just and full compensation is made therefor, is an exercise of one of the highest prerogatives of the state. It cannot be done under our form of government arbitrarily. The necessity therefor must always exist. It must be a public one. It is not enough that convenience would be subserved by the taking, but the right cannot be exercised until that convenience has ripened into an actual public necessity. Government is a necessity, and therefore has the right to exist. It is for the benefit of all citizens, and its prerogatives consist of such rights and such powers as it may become necessary to exercise in maintaining the particular form adopted, and in securing the greatest good and greatest prosperity to the largest number of its people; and it is only in the accomplishing of these objects that the state is ever justified in taking private property for public use.

The manner and extent of taking private property for such public use is regulated by the application of principles

as old and as well-defined as is the right itself. These principles are organic, and contained in our constitutions, both State and National, one being a limitation upon and the other a grant of powers ; and any law enacted by the legislature, or any proceeding in any court, which is not clearly within the letter or spirit of these constitutions upon this subject, or the principles upon which they are founded, is unwarranted, and without force or effect. The power to take the private property of the citizen, when attempted to be exercised, is usually referable to the right of eminent domain, or to the right of taxation—to both of which resort has been found necessary in maintaining the government and accomplishing its objects.

It has been well said by Justice Ruggles, in the case of *People v. Mayor of Brooklyn* 4 N. Y. 419 : "Private property, taken for public use by right of eminent domain, is taken, not as the owner's share of contribution to a public burden, but as so much beyond his share. Special compensation is therefore to be made * * * because the government is a debtor for the property so taken. * * * The exercise of the right of eminent domain operates upon an individual, and without reference to the amount or value exacted from any other individual or class of individuals."

The right of taxation enables the state to exact "money or services from individuals as and for their respective shares of contribution to any public burden. Taxation operates upon a community, or upon a class of persons in a community, and by some rule of apportionment." It requires no special compensation to be made to the person taxed, because the government is not a debtor for the property taken. The payment of taxes is a duty, and creates no obligation to pay otherwise than in the proper application of the tax.

The right of eminent domain is more properly applicable to taking real estate for public use, while the right of taxation applies to both real and personal property. Under the latter right the property itself is not taken, except in default of payment of the amount of money or services required. In the case before us the exercise of both the

right of eminent domain and the right of taxation is invoked. The exercise and enforcement of these rights is attempted against these respondents and their property by the municipal authorities of the city of Detroit.

When the legislature has delegated the right to exercise the power of eminent domain to a municipal corporation, to enable it to take the land of the citizen for public use, the necessary rules should be prescribed by that body to limit and secure its exercise in such manner as not to infringe any of the principles upon which the right is based; and when no compensation or payment for the property taken is authorized or made, it is very clear that the procedure cannot be sustained; and as we have said, this seems to be the case under this statute, so far, at least, as relates to taking property to widen a street, and this fact alone is sufficient to make a dismissal of the proceedings before us necessary. Not only is the act deficient in this respect, but the proceedings themselves are not within the purview of the act. The case of street opening and that of widening a street are two different things. The one may relate to leasehold interests, in their nature personal almost entirely, which would render a large amount of damage and compensation necessary to be paid, and much work to be done, while the other may relate exclusively to the freehold itself, as in the present case. One assumes the existence of the other, and the proceedings in the one case under the act are in several respects quite different from the other, and require different treatment. Necessity may imperiously demand the one, while none at all exists for the other; one may be a matter of convenience only, while the other is indispensable.

In a statute authorizing these proceedings, or in the proceedings themselves, nothing should be left in doubt or uncertainty as to their character or object, or in the means provided for the accomplishment of the object.

With much propriety I might here close the discussion of the case. Still, there are some other features to which our attention has been called by counsel, which, perhaps, it is not altogether improper to notice. The source and

right of taxation have already been noticed. This right, like that of eminent domain, can only be exercised under legislative enactment, and both the law and the proceedings taken thereunder, in any given case, must, as we said, conform to the principles upon which the right is based and exists. The power to tax must be exercised with some regard to the distribution of burdens, and not arbitrarily. Taxation, as a general thing, can only be justified for public purposes, and as affecting some well-defined class or community of that public. It must operate upon a community or class, and by some reasonable rule of apportionment by which the amount required to be paid by one person or piece of property shall bear some relation to the amount to be paid by another. The improvement of private property is no part of the object of government, and therefore, if private property receives, incidentally, a benefit by the public use of that taken, such benefit furnishes, in my judgment, no just ground or correct basis for taxation. I fail to discover any principle upon which a citizen can be compelled to improve his land, or to pay others for improving it for him against his will, unless required under proper police regulations.

These general principles may be found in both the letter and spirit of the requirements and are limitations enjoined upon the Legislature, in the Constitution, in exercising the right of taxation. The following provisions show the jealous care the people have observed upon this subject in guarding and protecting the right to private property, viz.: "The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law." Const., Art. xiv., § 11. "All assessments hereafter authorized shall be on property at its cash value." Id. § 12. "The Legislature shall provide for an equalization by a State board * * * of assessments on all taxable property, except that paying specific taxes." Id. § 13. "The property of no person shall be taken for public use, without just compensation therefor." Art. xviii., § 14. "The Legislature shall provide for the incorporation * * * of cities and villages, and shall

restrict their powers of taxation." Const., Art. xv., § 13.
"Private property shall not be taken for public improvements in cities and villages without the consent of the owner, unless the compensation therefor shall first be determined by a jury of freeholders, and actually paid or secured in the manner provided by law." Id. § 15.

It will be seen at a glance that these provisions contain principles which, if properly applied by courts and juries, can never fail to do justice, both to the individual and the public. There is no latent meaning in them, requiring any great refining of construction to bring it within the comprehension of the most ordinary understanding.

With this view of the principles which should govern the Legislature in its action, and the proceedings of the courts thereunder, I pass for a few moments to the consideration of those taken in this case, and of which the respondents make complaint. By the Act of 1883, above referred to, legal proceedings in this class of cases must be commenced in the Recorder's Court for the city, and the case must be tried by jury. Sec. 3. The jury must be sworn to give a true verdict in the case "according to law and the evidence." They are to "hear the proof and allegations of the parties, and the arguments of counsel, and, if so ordered by the court, shall go to the place of the intended improvement in charge of an officer, and upon, or as near as practicable to any property proposed to be taken or assessed, and examine the premises;" and they are to be "instructed as to their duties and the law of the case by the court," and render their "verdict in the same manner as on the trial of any ordinary civil case." Sec. 11.

On the hearing upon an appeal taken to this Court, the Court has "power to determine the case upon the facts and the law as in chancery appeals, and to enter such final judgment or decree as may of right appear, and may remand the case to the court below for such further proceedings before a jury, or otherwise, as may be necessary." Sec. 18. Thus it will be seen that the whole proceeding is anomalous in its character, being partly at law and partly in equity; but this

is no objection if it is properly authorized, and the proper rules are observed and applied.

The record does not show that any view of the premises was ordered by the court or had by the jury upon the trial. Their verdict should therefore have been based upon the testimony. The oath they had taken required this; and it was the duty of the court to state to them the principles of law by which they should be governed in considering the testimony and its bearing. While it was the province of the court and jury to act independently of each other, in the particular duty imposed upon each, neither could lawfully act arbitrarily to the prejudice of either party. The court in its charge told the jury, in regard to the value of the property proposed to be taken, "You have a right to follow your own judgment, although it may differ from the testimony of the witnesses." This was erroneous. The city proposed to take the whole of Mrs. Chaffee's property in this proceeding. We have all the testimony taken at the trial before us in this record, and there is nothing appearing in it, from beginning to end, showing or tending to show that the jury, or any one of them, had any superior knowledge or qualifications upon the subject, or had ever seen the property proposed to be taken, or knew of his or their own knowledge the market value of said property, or that of any other real estate in the city of Detroit.

Chief Justice Cooley, in his work on Constitutional Limitations, in speaking of the rule upon the subject, says: "If the whole of a man's estate is taken, there can generally be little difficulty in fixing upon the measure of compensation; for it is apparent that in such a case he ought to have the whole market value of his premises. * * * The question is reduced to one of market value, to be determined upon the testimony of those who have knowledge upon that subject, or whose business or experience entitles their opinions to weight." [p. 465.] The rule here laid down and so clearly stated cannot fail to commend itself to any reasonable mind, and upon the facts stated should be faithfully applied. It is in accordance with justice and fair dealing, which it is the

object of courts to practice and enforce. If there ever was a case when this rule should be applied, it would seem this was certainly one. The testimony, I think, clearly shows Mrs. Chaffee's property to be worth over $10,000, and the jury awarded her $5000. The witnesses by whom this was shown (several of them) were in no way interested in the result of the proceeding, and so far as the record shows, were very intelligent and of the most reputable character. In a case where the jury are required to render a verdict according to the law and the testimony, I know of no rule recognized by courts, or worthy of recognition, which would permit the jury arbitrarily to disregard such testimony and base their verdict on some feeling springing up upon the trial that they may happen to indulge at the time, or on some feeling of favor, prejudice or caprice towards one of the parties.

In my judgment the consequence of such error as was committed upon this point cannot well be better illustrated than is witnessed in the result of the present case. Here the entire estate of Mrs. Chaffee is taken from her against her will for less than one-half its value ; and because her husband's land adjoined that taken, his property is adjudged benefited one-half the sum allowed her, and he made to pay it ; thus substantially taking from the two over $10,000 worth of real estate and turning it over to the city, which is only required to pay in return therefor $2500. This is not the just compensation contemplated by the Constitution which is to be made when private property is to be taken for public use ; neither is the arbitrary action of the jury the reasonable or legal way of ascertaining such compensation. The Legislature never intended such action, and it must not be tolerated in courts of justice. To permit it under the forms of law would be legal oppression. The public necessity for taking the property of Mrs. Chaffee had to be determined by the jury, and so far as the record shows, the only information they had to guide them to their conclusion was the testimony of witnesses given in the case. In the testimony which the witnesses gave, the necessity for opening a street between the points named seems to have been the prominent

idea presented to the jury; whereas, as we have said, really the only necessity for them to pass upon was that of taking the land of Mrs. Chaffee to widen the avenue. By the course pursued, the real question of the necessity to widen the street was either not passed upon by the jury, or so confounded with the necessity for opening the street as to render it impossible for them to correctly pass upon the one separately and distinct from the other. This becomes apparent when we come to look into the examination of the witnesses upon this subject.

Counsel for the city examined three witnesses upon the question of necessity. The question put to the first was, "What have you to say as to the public necessity of opening this street as proposed?" The same question was put to the second witness; and the third witness said, "I think the opening this street as proposed would be a public benefit." The first sentence of the charge of the court to the jury was, "The first question you will have to pass upon will be as to the necessity of opening the street in the manner proposed."

I do not think any proper testimony was submitted to the jury from which they could determine the question of public necessity for taking the land of Mrs. Chaffee to increase the width of the street, or the existence of any public necessity to increase the width of the street to one hundred feet. That the city had omitted to improve or pave the street fifty feet wide, already dedicated and in use, was certainly no evidence of public necessity, but rather of public neglect on the part of the city authorities. The liability of the property to be condemned for street purposes, and the litigation liable to occur in securing condemnation, were not proper subjects for the consideration of the jury in determining the damages and compensation to which Mrs. Chaffee was entitled, and so far as they were taken into account it was improper. Neither were the deed and releases of the right of way across the Brush farm proper testimony in the case, and should have been excluded. Mrs. Chaffee was entitled, if the proceeding was legally authorized to condemn her land, to the just and full market value of the same, not for any particular

purpose, but to be used for any lawful purpose, freed from all other considerations; any testimony offered, tending to depreciate such value, when limited to certain specified purposes, was improper, and if objected to should not have been received.

The testimony admitted by the court for the purpose of showing that Mr. Chaffee deeded the land proposed to be taken, to Mrs. Chaffee, with a view of her obtaining the value of it from the city in this proceeding, without taking into account his ownership of the adjoining parcel, was clearly inadmissible. His motive for disposing of his property to his wife before this proceeding was commenced could not affect her right to its value. The admission of this testimony, accompanied by the statements of counsel made at the time, could hardly fail to prejudice the jury against her rights in the proceeding. The mischief done by the admission of this evidence could scarcely be eradicated by the charge of the court at the close of the trial to disregard entirely this class of testimony. The testimony was well calculated to give an unfavorable coloring to all the proceedings on the part of the contestants in the case, and it is impossible to say to what extent such effect was produced.

In regard to the trial proper it only need be said further that the errors occur so frequently and are of such a damaging character as to render it impossible to sustain them, and the verdict of the jury determining the value of Mrs. Chaffee's property proposed to be taken is not only against the clear weight of the evidence, such as it was, but so far inadequate and unjust as to make it imperative upon any court having jurisdiction of the case to set it aside.

I have not considered the questions raised upon this record in the order presented by counsel for the respondents, and in conclusion will briefly notice but one other point: It is claimed that the act is unconstitutional because it authorizes the jury to apportion and assess half the damages and compensation awarded Mrs. Chaffee upon only such portion of the property within the assessment district as is, in the opinion of the jury, benefited by the proposed improvement; that

this provision substantially destroys the assessment district. This Court has already decided that local improvements may be made and private property may be taken when the necessity exists to make them, if necessary for that purpose, and local assessments made to raise the money to pay for the same; and in so doing the provisions of the Constitution above referred to are not infringed ; and it is further held that " these local assessments for the improvement of streets are made in the exercise of the power of taxation." But such local burdens cannot be imposed in a manner which disregards the fundamental principles of taxation. This assessment must be for a public purpose and affect some well-defined community, and some proper and reasonable rule of apportionment must be observed in all local as well as general taxation ; that is to say, the apportionment should be such that the amount paid by one person or piece of property shall bear some reasonable relation to the amount paid by another in the assessment district or community where the burden is to be borne. These principles are so elementary as to need no citation of authorities.

In this State the law allows an assessment district to be created for the purpose of making therein local improvements, and the property therein to be assessed in proportion to the extent of the benefit received by each party required to discharge the burden. While I understand this to be the rule recognized as governing at the present time, I am free to confess that, as an original proposition, I should find much difficulty in bringing my mind to consent to making benefits a basis of taxation, and I fully agree with Mr. Justice Campbell that the literal construction of our Constitution is that all taxes, whether local or general, should be assessed upon property only as excepted in that instrument, and such I believe to be the real intention and spirit of our Constitution upon that subject. But admitting benefits to furnish a proper basis, then how does the case we are discussing stand under the act in question ? This Court held in *Motz v. Detroit* 18 Mich. 495, that a taxing district is necessary, and a proper apportionment throughout such district. The Legislature

has provided for the taxing district, and the record shows one was created in Detroit in this case in pursuance of such provision by the city council. The act in question, however, substantially does away with the taxing district by permitting the jury to determine what property in the district is benefited by the proposed improvement, and then directing them to make the assessment against such persons only. The council, in establishing the district, determines the property to be assessed. It is really that which determines the extent of the district. If the jury may omit one person's property from sharing the burden in a case where a hundred are liable, they may omit all but one. Either case would be a violation of the fundamental principles of taxation, as laid down by this Court, and the provisions of the act which permits this to be done must be held in conflict with the Constitution, and cannot be upheld.

In no view we have been able to take of the case can the proceedings be sustained. The verdict and judgment in the Recorder's Court must therefore be set aside and the proceedings dismissed, and the respondents must recover their costs in both courts.

CAMPBELL and CHAMPLIN, JJ. concurred.

COOLEY, C. J. When the Court has decided that the statute, in its application to a case of the widening of a street, is defective, all discussion of general principles to be applied under an effectual statute is obiter, and binds no one—not even the Court. I therefore refrain from entering into such a discussion, merely remarking that much appears in the opinion of Mr. Justice Sherwood in which I do not concur.