*In re* ED. HENDRICKS.

**No. 11481.**

1. CONSTITUTIONAL LAW — *Conflict in Statute.* A legislative enactment incapable of interpretation and enforcement because of irreconcilable conflict of meaning between its principal provisions will be held inoperative and void.

2. DOUGLAS COUNTY COURT—*Invalid Act.* Chapter 124, Laws of 1899, being an act to create a county court in Douglas county and to limit the jurisdiction of justices of the peace in the city of Lawrence, is such an enactment.

*In re* Hendricks.

Original proceedings in *habeas corpus.* Opinion filed July 8, 1899. Petitioner remanded.

*S. D. Bishop,* and *William H. Mason,* for petitioner.

*W. B. Brownell,* county attorney, and *L. C. Poehler,* for respondent.

The opinion of the court was delivered by

DOSTER, C. J. : This is a proceeding in *habeas corpus.* On the 25th day of May, 1899, Ed. Hendricks, the petitioner, was committed to the jail of Douglas county upon a charge of petty larceny by order of a justice of the peace of the city of Lawrence. He alleges that chapter 124, Laws of 1899, which took effect by publication in the volume of session laws on the 15th day of May of this year, deprived justices of the peace in the city of Lawrence of jurisdiction over criminal actions, wherefore he is wrongfully restrained of his liberty under the order of commitment. Such portions of the act in question as are material to an understanding of the case read as follows :

"AN ACT creating a county court in Douglas county, Kansas, fixing the jurisdiction thereof, and defining the powers and duties of the officers thereof, and limiting the jurisdiction of the justices of the peace in the city of Lawrence in said county.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That in the city of Lawrence, Douglas county, Kansas, a court is hereby *created,* to be called the 'county court of Douglas county, Kansas.' Said court shall have one presiding judge. . . . The court *hereby created* shall sit in the city of Lawrence, . . . provided, that after this act shall take effect justices of the peace of said city of Lawrence shall have no jurisdiction of any case, civil or criminal, except in civil actions for the recovery of money only where the amount claimed, exclusive of interest and costs, does not exceed the sum of one dollar.

"SEC. 2. The governor shall, within twenty days

after the enactment of this bill, appoint and commission the judge of said court, whose term of office shall commence with the date of his commission and who shall hold his office until the second Monday in January, 1901, and until his successor is qualified, as hereinafter provided.    .    .    .

"SEC. 8. That the board of county commissioners of Douglas county shall submit to a vote of the qualified voters of said county at the next general election, for the purpose of submitting to the qualified electors the question of whether or not the county court of Douglas county shall be established. The proposition to be submitted shall be printed on the official ballot, and shall bear the printed words and figures, thus :

" Shall a county court be established for Douglas county, Kansas ?

| Yes | |
|-----|--|
| No  | |

" Each elector shall designate his vote by a cross in the blank after the word ' Yes ' or ' No ' as he desires to vote for or against said proposition. Said votes shall be canvassed by the board of county commissioners, and the clerk shall immediately certify the result of said election to the governor of the state of Kansas, who, if the majority of the electors voting on the proposition at such election shall favor the creation and establishment of said county court, shall immediately appoint a judge for said court, as hereinbefore provided.

" SEC. 9. All acts or parts of acts in conflict with the provisions of this act be and the same are hereby repealed.

" SEC. 10. That this act shall take effect and be in force from and after its passage and publication in the statute-book.

"Approved March 4, 1899."

It is contended upon the part of the petitioner that all of the above partially quoted act is valid except section 8, which requires a submission to the voters of Douglas county of the question whether the court shall be established. That section is said to be a dele-

gation of legislative power, and therefore repugnant to the constitutional provision which vests such power in the house of representatives and the senate, and in support of such view *Barto v. Himrod*, 8 N. Y. 483, *Santo et al. v. The State of Iowa*, 2 Iowa, 165, and other like cases are cited. It is contended, however, by the petitioner that this section is separable from the remainder of the act, and may be and should be expunged, as it were, leaving the other portions to stand. The provisions thus left standing under this view would be those depriving justices of the peace of the city of Lawrence of criminal jurisdiction and vesting it in the county court of Douglas county. The contention upon the other hand is that section 8 rightly construed is not to be viewed as a delegation of legislative power, but as merely authorizing a submission to the voters of Douglas county of the question whether a county court should be established, and providing for its establishment in the event the voters should so elect. It is said that the law is a complete and unconditioned expression of the legislative will; that such will took effect by enactment, executive approval, and publication in the statute-book, and that such will merely was that the electors might or might not, as they chose, provide themselves with a specially modified judicial system. This, it is said, may be done upon the principle on which the cases of *Phœnix Ins. Co. v. Welch, Supt.*, 29 Kan. 672, *The State v. Hunter*, 38 Kan. 578, 17 Pac. 177, and other like cases were decided, without trenching upon the theory of the non-transferability of legislative power. In addition to the two decisions of our own court, *Warner v. Hoagland*, 51 N. J. (Law), 62, 16 Atl. 166, *The State v. Parker*, 26 Vt. 357, *Wales v. Belcher*, 3 Pick. 508, *The State, ex rel., v. Sullivan*, 67 Minn. 379, 69 N. W. 1094,

*In re* Hendricks.

and others, are cited. It is further contended upon the part of the respondent that a general survey of the whole act in question shows that none of its provisions was designed to be operative until after the election upon the question of the establishment of the court, and then only in the event of a favorable vote. This view, if correct, would leave the justice of the peace who ordered the petitioner's commitment in the full exercise of his usual jurisdiction until after the ensuing general election.

The question thus presented is an interesting and important one. A legislative act which provides for its taking effect in the contingency of a favorable popular vote is an illustration of the "referendum" principle of direct legislation by the people. This is said in a broad and untechnical sense, and without reference to the distinction which the courts have drawn between the attempted enactment of laws by popular vote and the acceptance of an enacted law by popular vote. The writer, speaking for himself alone, is firmly of the opinion that the principle of direct legislation is the wiser and more democratic principle, and would like to see it incorporated into the political system of the country. He nevertheless joins with his associates in holding that the above-quoted act is inoperative and void. Our view, however, is not affected by the consideration that the enactment may be regarded as an application of the *referendum* principle, or as a delegation of legislative power, but by the fact that its principal provisions are so irreconcilable and absolutely contradictory of one another as to prevent the act from having any meaning or effect whatever. A brief analysis of these provisions will show this to be the case.

Section 1 declares that "a court is hereby created."

*In re* Hendricks.

These are words of the present tense, conditioned, however, in law to the time of the taking effect of the act.   That time of taking effect was, by section 10, "the publication of the act in the statute-book."   By the further provisions of section 1 justices of the peace of the city of Lawrence were deprived of all jurisdiction of criminal cases.   So that by the publication of this enactment a court was created, its jurisdiction defined, a presiding judge and subordinate officers provided for, and the jurisdiction of other judicial tribunals taken away or limited to accommodate it. Section 2 provides that "the governor shall within twenty days after the enactment of this bill appoint and commission a judge of said court, whose term of office shall commence with the date of his commission and who shall hold his office until the second Monday in January, 1901."   The term "enactment," although inapt to express the beginning of a period of time for the governor's action, might properly be construed to mean "taking effect," so that its use in the section does not prevent an understanding of the act in that respect.   The requirement upon the governor to make the appointment within the time specified emphasizes the terms of section 1, which in words of the present tense creates a court and vests it with jurisdiction.   Section 9 reads, "all acts and parts of acts in conflict with the provisions of this act be and the same are hereby repealed."   According to this all laws conferring jurisdiction upon justices of the peace except to the limited extent specified were repealed so far as the city of Lawrence is concerned.   Thereafter the office of justice in that city was but little more than a nominal one and the jurisdiction pertaining to it limited to actions for the recovery of the small sum of one dollar.   (*In re Greer*, 58 Kan. 268, 48 Pac. 950.)

It is hardly accurate to say that by this section all conflicting laws were repealed. These laws, being general in their nature, were not repealed in the proper sense of the word, but the city of Lawrence became exempt from their operation. Such is the meaning of this section rightly construed.

So far the act is reasonably plain and susceptible of comprehension. Were it not for section 8 it could take effect and be enforceable according to its terms, as thus far stated. That section, however, provides that "the board of county commissioners of Douglas county shall submit to the voters at the next general election the question whether the county court of Douglas county shall be established," and it declares that if a majority of the electors voting upon the proposition shall favor the establishment of the court the governor "shall immediately appoint a judge of said court as hereinbefore provided." It is impossible to reconcile this section with the other provisions of the act. Section 1 establishes the court *in præsenti*. Section 8 establishes it *in futuro*, and conditioned upon a majority vote of the electors. Section 2 requires the appointment of a judge within twenty days after the taking effect of the act and fixes the commencement of his term of office at the date of his commission. Section 8 delays the appointment of the judge until after the next general election and conditions his appointment upon the action of the electors. In the face of these repugnant provisions how is it possible to ascertain the real legislative intent? If we should say that the act is not to take effect until after the next general election and then only in the event of the acceptance of its provisions by the electors of Douglas county, we would do so in the face of the plain declaration of section 10 that "this act shall

take effect and be in force from and after its publication in the statute-book." If we should say that the act took effect in accordance with the provisions of section 10, we would decide that, in accordance with the provisions of section 1, the court thereby became created and the governor thereby required to appoint a judge in accordance with the provisions of section 2, but this would have to be said in the face of the fact that by the terms of section 8 the court is not to be established nor the judge appointed except as authorized by a vote therefor at the next general election.

If we were to say, in accordance with the theory of the respondent, that the act merely authorizes the submission to the voters of Douglas county of the question whether they desire the establishment of a county court, and that the taking effect of the act according to section 10 was merely the taking effect of the legislative will that such question should be submitted, we should have to do so in disregard of the mandate of section 2, requiring the governor to appoint a judge of the court "within twenty days after the enactment of the bill." If we were to construe the words "enactment of the bill" to mean "taking effect of the act," as for some purposes we may, we would be no further advanced toward a point of harmony between the conflicting sections. That would only be saying that the governor should appoint a judge of the court within twenty days after the taking effect of the legislative will to submit the question to the voters. The repugnancy between the two sections would not be removed; it would still exist. If we were to say that "twenty days after the enactment of the bill" means twenty days after the taking effect of the act, and that "twenty days after the taking effect of the act" means, in that instance, twenty days after the accept-

ance of the act by the voters, we would be guilty of a most frightful perversion of language and distortion of meaning.    By no possibility can section 2 bear such construction.    The last sentence of section 8 requires that the governor, in the event of a favorable vote upon the proposition, establish the court, and "immediately appoint a judge for said court as hereinbefore provided."    It may be thought that the words "as hereinbefore provided" have reference to the appointment previously required by section 2, and that they limit the appointment in matter of time to the period after the election.   So to hold, however, would be to disregard all possible meanings which the words "enactment of the bill" can bear, and would be to perform, as before shown, the impossible act of extracting the meaning "acceptance of the bill by the voters" or "majority vote on the bill" out of the words "enactment of the bill."    That cannot be done.

The only possible construction which this act will bear, and by which a semblance of harmony between its provisions can be secured, is that the court is created as declared by section 1; that the governor shall appoint and commission the judge within twenty days after the taking effect of the act, and that the court thus established shall exist until the next general election, after which, if the voters so elect, it shall be continued and a new appointment made, and if the voters do not so elect, the court thus created shall be abrogated and the judge thus appointed shall go out of office ; in other words, that the court created is to be tentative and provisional only and to depend for its continued existence upon the will of the electors. This could not have been the legislative intent.   Nothing in the words of the bill authorizes such an inference. If we were so to hold it could be done only by forced

*In re* Hendricks.

and unusual construction — a construction, too, in op-position to some of the plain provisions of the act. For example, by section 2 the term of office of the judge thus to be provisionally appointed is made to last until the second Monday in January, 1901, long after the abrogation of the supposed provisional court. Again, by section 9 all conflicting acts were repealed; that is, as before construed, the city of Lawrence was exempted from the operation of all conflicting acts. If the theory of a temporary court conditioned for future existence upon the will of the electors be accepted, it would follow that all conflicting laws were temporarily repealed, that is, their operation suspended in the city of Lawrence during the existence of the provisional tribunal, and that immediately upon its dissolution they came again into force and effect. This could not be tolerated for a moment. Law is a rule of action, and it comes into being and goes out of being in obedience only to the legislative will, and during the time of its existence it is not the subject of experiment, of trying on and putting off. It is not a thing to be suspended, to be hung up for a day, the while something else is tried. It can be got rid of only by unconditional repeal.

As stated, however, the petitioner urges that section 8, being alone objectionable upon constitutional grounds, and being separable from the remainder of the act, may be eliminated and the other sections allowed to stand. It is true that parts of a statute repugnant to constitutional provisions do not nullify the whole of the act of which they are a part, if they can be so separated from the remainder as to leave a complete and intelligible whole. This, however, is not true where it is plain to be seen from the entire act that the inclusion of the invalid provision was a

determining inducement to the legislative action.    If
it be plain that the legislature would not have passed
the valid portions of the law without the invalid por-
tion the entire act must fall.    We hold it plain in this
case that the legislature intended section 8 as an inte-
gral portion of the entire act; that the submission of
the question of the establishment of the court to the
voters inhered in the legislative intent and was one of
the inducing causes to legislative action.    When the
legislature has declared that a court should be estab-
lished in the event that the electors approved of its
establishment, it is not to be supposed that it intended
the court to be established irrespective of the popular
vote provided for.    It would be absurd to say that the
legislature intended that to be unconditioned which it
has expressly made conditional.

We are aware of the rule which requires courts to
endeavor to harmonize conflicting portions of a stat-
ute.    We have diligently endeavored to observe the
rule in this case, but can arrive at no comprehension
of the legislative intent in the enactment of this meas-
ure.    It must therefore be held inoperative and void
because of the absolute contradiction between its prin-
cipal provisions.    However averse the courts are to
such action, they have several times heretofore been
compelled to take it.    In *Hughes' Case*, 1 Bland Ch.
46, it was said:

" When an act of assembly authorizes an object to
be attained and the prescribed course of attaining it
is deficient, that of the forum resorted to may be pur-
sued for the purpose of supplying such deficiency.    If
the deficiency cannot be so supplied, with propriety and
effect, then the court applied to can have no jurisdic-
tion; and if it cannot be supplied by any other court,
then the act of assembly must be treated as a nullity,
because of there being no tribunal competent to exe-
cute it."

In *Drake v. Drake*, 4 Dev. 110, a portion of an act supposed to be passed for the purpose of casting descent upon illegitimate children was held to be inoperative and void because of the failure of the legislature to make manifest the persons upon whom the descent was cast. In *Chaffee's Appeal*, 56 Mich. 244, 22 N. W. 871, it was ruled that "an act which authorizes a municipal body to open and widen streets according to the procedure therein prescribed, and then prescribes no procedure for cases of widening streets, is to that extent inoperative." In *Ward v. Ward*, 37 Tex. 389, it was ruled:

"The act of November 1, 1871 (Pamphlet Acts, p. 17), authorized appeals from interlocutory judgments, orders or decrees thereafter rendered by the district courts, and required that such appeals be regulated by the law regulating appeals from final judgments in the district court, so far as the same may be applicable thereto. *Held*, that this act is nugatory and void, for the reason that the statutes regulating appeals from final judgments are entirely inapplicable to appeals from interlocutory judgments."

In the opinion it was remarked:

"We hesitate, to consider well any judgment of ours which declares unconstitutional or void an act of the legislature, paying due deference to the learning and wisdom of that branch of the government. But when we find ourselves totally unable to administer a law by reason of its uncertainty or ambiguity, or believe it to be unconstitutional, we shall not hesitate to discharge the duty which the law devolves upon us. . . . We do not mean to say, by any means, that the act of November 1, 1871, is unconstitutional, but we do say that it is nugatory and void for want of some adequate provision in the law to carry out its execution. And, for the reasons given, the appeal in 1287 must also be dismissed."

In *State v. Partlow*, 91 N. C. 550, a statute prohibit-

ing the sale of intoxicating liquors within three miles of a certain named church in a certain named county was considered. There were two churches of that name in the county. The act was held inoperative and void for lack of ascertainable meaning. Other cases bearing more or less directly to the same effect might be cited. These, however, are sufficient to show the existence of the rule we have invoked.

The conclusion is that the justice of the peace had jurisdiction over the person of the petitioner. He is therefore remanded to the custody of the respondent.