Argued 26 June; decided 7 July, 1902.

## SCHOOL DISTRICT *v.* PALMER.

[69 Pac. 453.]

SCHOOL DISTRICT—CHANGING BOUNDARIES—STATUTES.

Laws, 1899, pp. 209, 216, § 19, subd. 1, creates a District Boundary Board, which is given power to make alterations and changes in the boundaries of school districts when petitioned to do so "in the manner hereinafter specified." No manner of petitioning the board is prescribed by statute. *Held,* that, construed in the light of the former statute (Hill's Ann. Laws, § 2590, subd. 3), the phrase, "in the manner hereinafter specified," should be regarded, not as surplusage, but as modifying "petitioned," and, as no manner of petitioning is specified, the board is without authority to make changes in boundaries. The mode of exercising the power conferred was intended to be its measure, and, there being no mode, there is practically no power.

From Linn: REUBEN P. BOISE, Judge.

Proceeding by School District No. 110 against D. M. Palmer and others, constituting the District Boundary Board of Linn County, to review the action of that board in changing the boundaries of district No. 110. From a judgment dismissing the petition, plaintiff appeals.                 REVERSED.

For appellant there was a brief over the name of *Weatherford & Wyatt,* with an oral argument by *Mr. James K. Weatherford.*

For respondents there was a brief over the names of *H. C. Watson* and *L. L. Swan,* with an oral argument by *Mr. Watson.*

MR. JUSTICE WOLVERTON delivered the opinion.

This case comes here on plaintiff's appeal from a judgment of the circuit court dismissing a proceeding instituted by it to review the action of the District Boundary Board of Linn County, Oregon, changing or re-establishing the boundaries of School District No. 110. The board acted upon a petition of 16 persons, residents of said district and certain unorganized school territory, praying that such unorganized territory be added to the district, and another of 20 residents of district No. 4, praying that its north boundary be re-established as it was originally when district No. 109 was severed from it. Other

patrons of district No. 110 protested, assigning two grounds therefor: (1) That the school house was too small; and (2) that such action as prayed for would make district No. 110 liable for the debts of the old district No. 109.

The plaintiff insists that the board was without adequate authority in the premises, and, therefore, that its acts in changing or re-establishing said boundaries were inoperative and void. The board derived whatever authority it had from section 19, subdivision 1, of the act of the legislative assembly of 1899 creating it (Laws, 1899, pp. 209, 216), which reads as follows: "The superintendent and the county court, or the board of commissioners in counties where this board is a separate body, shall constitute a board for laying off his county in convenient school districts, such board to be styled the District Boundary Board. Said board shall make alterations and changes in the same when petitioned so to do, in the manner hereinafter specified; and the superintendent shall make a record showing the boundaries and numbers of all the districts in his county so established and organized." The construction put upon this section is that the board can only make the alterations and changes when petitioned in the manner specified, and the contention is that as the manner is not specified, and no method of procedure has been prescribed, the statute is a nullity, and the board, although legally constituted, is left without power in that particular. The respondents contend for a different construction, which is that the board shall make the alterations and changes in the manner specified when petitioned so to do; that is to say, that the words "in the manner hereinafter specified" do not refer to the petition at all, but to the manner of establishing and changing boundaries of districts.

The statute was intended, no doubt, as a revision of the former method of altering and changing the boundaries of school districts, devolving the authority upon the District Boundary Board instead of the superintendent, but the language conferring the power is identical in either case. We may look, therefore, to the old statute which this was intended to revise, and consider it in connection with the new in the ascertainment of a

proper interpretation. By the old it was provided that "he (the superintendent) may establish new districts, when not already laid off, on petition of three legal voters of each proposed new district, but shall not make any changes within the districts of his county unless petitioned so to do by a majority of legal voters of each district concerned in the change": Hill's Ann. Laws, Tit. III, § 2590, subd. 3. There was no special manner provided as to the method to be pursued by the superintendent in changing boundaries. When he concluded that it was proper to make an alteration or change, he entered the same of record, there being no prescribed mode; nor is there any more specifically prescribed manner or mode under the new law for making such changes or alterations. The present statute further provides that, when the board shall have established a new district, the superintendent shall notify three of the petitioners therefor, giving the number and boundaries thereof, and when alterations are made he shall notify, in manner aforesaid, the directors of all the districts concerned.

Now, there is no provision whatever for petitioning for new districts, or for having alterations or changes made in those previously established, beyond the provision last above referred to, which would indicate an intendment on the part of the legislature that new districts should be established on a petition of not less than three persons. It is very apparent, therefore, that something of the legislative purpose has been omitted in framing the act, and it is also quite apparent that the language "in the manner hereinafter specified," as used in the old act, alluded to the manner in which the superintendent should be petitioned to make the alterations and changes. If bearing that sense in the old, there is nothing in the new or present statute to indicate that it should be given a different construction; and such is the meaning derivable from its general arrangement. To give it the construction contended for by respondents, there must be a transposition of clauses, and this is not permissible unless such a meaning was clearly intended, such intention to be ascertained from other provisions of the act when construed as a whole; and there can reasonably be no such deduction in this case. Such

being the ascertained meaning of the act, it is wholly inoperative by reason of the omission of the legislature to prescribe the manner or mode for petitioning the board. The mode was intended to be the measure of the power, and, none having been adopted, the board was left without the requisite authority to make the alteration or change: *Chaffee's Appeal,* 56 Mich. 244 (22 N. W. 871) ; *State* v. *Partlow,* 91 N. C. 550 (49 Am. Rep. 652) ; *Ward* v. *Ward,* 37 Tex. 389. The board itself could not prescribe the manner, or say what would be a sufficient petition, because its authority depended upon being petitioned in the manner to be prescribed by the legislature, but which was omitted from the statute. It is further contended that the words "as hereinafter specified" should be treated as surplusage, which would leave the act otherwise complete and operative. It may happen that no sensible meaning could be given to some word or phrase in a statute, or that such a meaning, if given, would defeat the real object of enactment. In either case, the word or phrase might with propriety or should be eliminated: Endlich, Interp. Stat. § 301. But this is not the present case, as the real object of the enactment is apparent here, and the elimination would practically amount to a defeat of the object, and we find no reason for departing from the general rule that full effect must be given to every word if possible. *State· ex rel.* v. *Simon,* 20 Or. 365 (26 Pac. 170), is instructive as to the rules of interpretation more or less applicable here. These considerations lead to a reversal of the judgment, and it is so ordered.     Reversed.