No. 44,048

GREAT LAKES PIPE LINE COMPANY, a Corporation, *Appellee*, v. ANDREW G. WETSCHENSKY and WILMA M. WETSCHENSKY, *Appellants*.

(396 P. 2d 295)

Opinion filed November 7, 1964.

*Donald E. Martin*, of Kansas City, argued the cause, and *Robert D. Loughbom*, of Kansas City, was with him on the briefs for the appellants.

*Leonard O. Thomas*, of Kansas City, argued the cause, and *Lee E. Weeks*, *J. D. Lysaught*, *Richard Millsap*, *Robert H. Bingham*, *Ervin G. Johnston* and *Roger D. Stanton*, all of Kansas City, and *Leon B. Seck* and *William C. Nulton*, both of Kansas City, Missouri, were with him on the brief for the appellee.

*Wilbur G. Leonard*, of Topeka, attorney for Kansas Telephone Association, and *William C. Sullivan* and *Jack C. Lorenz*, both of Topeka, attorneys for Southwestern Bell Telephone Company, filed a brief *amici curiae*.

*Winton A. Winter*, of Ottawa, and *Irvin Fane* and *Howard F. Sachs*, both of Kansas City, Missouri, attorneys for Kansas City Power & Light Company, filed a brief *amicus curiae*.

The opinion of the court was delivered by

FONTRON, J.: This action grows out of a controversy over the construction and application of Section 60-502 of the Kansas Code of Civil Procedure (Laws 1963, ch. 303). The pleadings, which are framed with a view of bringing the action within the provisions of Sections 60-257 and 60-1701, Kansas Code of Civil Procedure, disclose that an actual controversy exists between the plaintiff, Great Lakes Pipe Line Company, a corporation, the appellee herein, and Andrew G. Wetschensky and Wilma M. Wetschensky, the defendants below, and appellants here. The trial court accepted jurisdiction of the case as an action for declaratory judgment and, after a hearing, rendered judgment in favor of the plaintiff. The defendants have appealed from that judgment.

The facts were stipulated and are not in dispute. The plaintiff

(sometimes referred to as Great Lakes) is a common carrier engaged in transporting refined petroleum products through an interstate network of pipe lines. The network is a primary source of supply of home heating oil and motor vehicle fuels for the upper midwestern area of the United States. Under Kansas statutes, plaintiff has the right of eminent domain.

By a right-of-way agreement dated December 18, 1930, plaintiff acquired a pipe line easement, not limited as to duration, in real estate which is now owned by the defendants. Pursuant to the rights granted by the easement, Great Lakes has installed six pipe lines across defendants' property, all of which are buried and no part of which are visible from the surface of defendants' land, although they would be observable from below the surface, were it possible so to observe them. Great Lakes is now and has been, ever since the lines were laid, transmitting petroleum products through all said lines.

In the present action, Great Lakes takes the position that, so far as its easement in the defendants' real property is concerned, the provisions of section 60-502 do not apply, but further contend that should it be held such provisions are applicable, then that the section is unconstitutional and void. On the other hand, the defendants maintain that section 60-502 is constitutional, that it does apply to the easement here involved, and that Great Lakes must file the extension affidavits required by the section.

For the problem presented in this appeal to be fully understood, Section 60-502 must be set out in its entirety.

"*Claims existing over twenty-five years.* (*a*) *Party out of possession.* No action shall be maintained by any person, regardless of whether such person is subject to any legal disability, who is out of possession of real property, to recover such property or to establish or enforce any lien, right, title or any other interest whatsoever therein, including any constitutional or statutory right of one spouse in any property of the other spouse, either living or dead, if any such interest is based upon an instrument dated, or upon facts or circumstances which arose or existed, more than twenty-five (25) years before the commencement of the action. In the case of any action to enforce any right in property alleged to have been alienated by one spouse without the consent of the other spouse, such period of twenty-five (25) years shall be deemed to have commenced with the recording of the deed or other instrument which effected the alienation of such property by the spouse who held title to the same.

"(*b*) *Instruments having fixed dates.* If any recorded instrument specifies a date for the maturity of a debt secured by any lien upon, or a fixed and unconditional period of time before the termination of any interest in, real property, the expiration of the period of limitation in subsection (*a*) of this

section shall not occur during a period of five (5) years after such date of maturity or such fixed and unconditional period of time.

"(c) *Affidavit for extension.* If the holder of any lien or interest described in this section, which lien or interest is not already barred by the application of some other statute of limitation, shall before the expiration of the applicable period of limitation under subsections (a) or (b) of this section or within one (1) year from the effective date of this article cause to be recorded in the county in which such real estate is located his statement under oath, or that of his legal guardian if he is under a disability, reasonably identifying such lien or interest and declaring the same to be presently valid, then the expiration of the period of the limitation of this section shall not occur within an additional period of five (5) years from the filing of such statement; and such time may be extended in like manner for additional periods of five (5) years each by filing such statements prior to the expiration of such extended periods.

"(d) *Determining possession.* For the purpose of this section, the following rules shall apply in determining possession of an interest in real property under any grant or reservation which is not by its recorded terms unlimited in duration;

"(1) If a fixed and unconditional period of duration appears of record, the grantee shall be deemed to be in possession unless his interest has been terminated by a default on his part in the terms of the grant or reservation.

"(2) If there is no such fixed and unconditional period of duration, or subsequent to one which has expired, the grantee shall be deemed to be in possession only: (i) If a condition appearing of record for the extension of the term is being fulfilled either by the grantee or by some other person on whose performance the grantee is legally entitled to rely, or (ii) if there is clearly observable physical evidence of his continuing possession on the property.

"(e) *Exceptions.* This section shall not apply to an action based upon:

"(1) A contingent remainder, remainder after life estate, reverter, or other conditional future interest unless it appears of record that twenty-five (25) years or more have elapsed since the contingency or condition was fulfilled or the precedent estate was terminated;

"(2) Any easement, the existence of which is clearly observable from physical evidence of its use; or

"(3) To actions commenced within one (1) year from the effective date of this act."

The first contention advanced by Great Lakes, in support of the trial court's judgment, is this: That from the inception of its easement, it has continuously transported petroleum products through its lines across the defendants' premises and that by virtue of such continuous use, the company is now, as it has been throughout the past, in full and complete possession of the easement granted to it. Accordingly, Great Lakes insists that it is not "out of possession" of its easement in the property owned by defendants, nor does it

come within the purview of subsection $(a)$ as a person "who is out of possession of real property."

The term "possession," as it relates to real property, in usual legal parlance denotes actual and continuous occupancy or exercise of full dominion. (42 Am. Jur., Property, § 42, p. 219.) However, for its own purposes, section 60-502 professes to provide its own rules for determining possession of an interest in real property. The provisions setting forth those rules are contained in subsection $(d)$.

As we read subsection $(d)$, it is so interlaced with contradiction as to be incapable of intelligent application. It commences with this wording: "For the purpose of this section, the following rules shall apply in determining possession of an interest in real property under any grant or reservation *which is not by its recorded terms unlimited in duration*" (Emphasis supplied.) The double negative "not . . . unlimited" is the grammatical equivalent of "limited." Thus, we believe it is the clear sense of the provision just quoted that the rules which are to follow shall be applied where the grant or reservation by its recorded terms is *limited,* or fixed, as to duration. Up to this point, there is no ambiguity; so far, subsection $(d)$ is reasonably plain and susceptible of comprehension.

However, in defining "the following rules" themselves, subsection $(d)$ further on provides in $(d)$ (2) as follows: "If there is no such fixed and unconditional period of duration, or subsequent to one which has expired, the grantee shall be deemed to be in possession . . ." (under certain specified conditions). Where the term of a grant is not for a fixed term, we deem that it must be *unlimited* in duration. Thus, subsection $(d)$ (2) is in obvious and direct conflict with the beginning paragraph of $(d)$ wherein the provisions of the subsection are said to apply where the grant is *limited,* not *unlimited,* in duration.

The general rule, in cases where contradictory provisions are contained within the same statute, is set out in 50 Am. Jur., Statutes, § 472, pp. 484, 485:

"In the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statute is certainty, and legislative enactments may be declared by the courts to be inoperative and void for uncertainty in the meaning thereof. This power may be exercised where the statute is so incomplete, or so irreconcilably conflicting, or so vague or indefinite, that the statute cannot be executed and the court is unable, by the application of known and accepted rules of construction, to determine what the legislature intended, with any reasonable degree of certainty. . . ."

This has been the recognized rule in Kansas for many years. In the early case of *In re Hendricks*, 60 Kan. 796, 57 Pac. 965, which involved the validity of an act purporting to create a county court of Douglas county, it was held:

"A legislative enactment incapable of interpretation and enforcement because of irreconcilable conflict of meaning between its principal provisions will be held inoperative and void." (Syl. ¶ 1.)

In *State, ex rel., v. Gaitskill*, 133 Kan. 389, 300 Pac. 326, this court had under consideration a statute relating to district courts in counties of a certain size, and providing that the second division therein be abolished should population fall below a certain point. In holding the enactment invalid, the court, on page 395, said:

"While an act of the legislature should not be declared invalid for uncertainty if susceptible of a reasonable construction which will give it support and effect, it may be so conflicting or indefinite in its provisions as to be incapable of reasonable interpretation and application. . . ."

. . . . . . . . . . . . . . .

". . . As we have heretofore seen, this state (Laws 1931, ch. 170) is conflicting in some of its provisions, it is vague, uncertain and indefinite in others, and incomplete in other respects. The result is we feel constrained to hold it to be inoperative and void."

A more recent pronouncement is found in *State v. O'Connor*, 186 Kan. 718, 353 P. 2d 214, in which we cited and adhered to the decisions in the foregoing cases.

We recognize the axiom that courts should be reluctant to pronounce legislative acts invalid. We likewise agree that courts have the duty to ascertain legislative intent, where such be possible, in honest endeavor to harmonize conflicting provisions within an act and give effect to the legislative will. (*In re Hendricks*, supra; *State, ex rel., v. Moore*, 154 Kan. 193, 117 P. 2d 598; Lewis' Sutherland, Statutory Construction, Vol. 1 § 86.) In this case, however, the contradiction is so direct and basic as to be irreconcilable. The terms "limited" and "unlimited" are antipodal. We are entirely unable to say, because of the opposite terms employed, whether or not the rules for determining possession which are set out in 502 (*d*) are applicable to a case such as this, where the term is not fixed, but is unlimited in duration.

In his recent and excellent work, Kansas Code of Civil Procedure, Annotated, Judge Spencer A. Gard, in commenting on subsection 502 (*d*), says that it sets up standards for determining possession in cases "where a grant or reservation is for a period not specified to be perpetual." Although we have the highest re-

gard for Judge Gard and while his opinions concerning the provisions of the new Code of Civil Procedure are entitled to great weight and respect, we believe that in this interpretation, he injects into subsection 502 (*d*) language which is not there. As we read 502 (*d*), it prescribes rules, or standards, to determine possession where the grant "is *not* by its recorded terms *unlimited*" (emphasis supplied) which is to say, where the grant *is* by its recorded terms, *limited.*

It may be worth pointing out that 502 (*d*) (1) deals with determining possession if a *fixed* and unconditional period of duration appears of record. Such is entirely consistent with the language which precedes it, *i. e.*, that the rules shall apply when the grant is *not* by its terms *unlimited.* The inconsistency makes its appearance only in the ensuing subsection (*d*) (2), which purports to prescribe rules for determining possession where the period of duration is *not* fixed, that is, where it *is unlimited* in duration. It is this contradiction which, we believe, renders subsection (*d*) so ambiguous and uncertain of meaning as to be void.

If it be suggested that we adopt either one or the other of the contradictory provisions and give effect to the one selected, we reply that such is not our prerogative. We are not authorized to embark upon a course of judicial carpentering. Were we to excise either the phrase "not by its recorded terms unlimited in duration" from the beginning paragraph of 502 (*d*) or the phrase "If there be no such fixed and unconditional period of duration" from 502 (*d*) (2), we would perform such amputation blindly.

Does our conclusion that the terms of 502 (*d*) are in irreconcilable conflict require that section 60-502 be held void in its entirety? We believe that it does. The rule to be applied in determining whether the invalidity of a portion of a statute, or of a section such as this, invalidates the statute or section as a whole is well stated in *State, ex rel., v. Consumers Warehouse Market,* 185 Kan. 363, 343 P. 2d 234:

> "Where parts of a statute or section thereof can readily be separated, that part which is constitutional may stand, while that which is unconstitutional will be rejected as being without legal efficacy. Where, however, the valid and void parts are not separate and independent of each other, but are so connected in the general scheme and purpose of the statute that they cannot be separated without violence to the evident intent of the legislature, the entire statute must fall." (Syl. ¶ 2.)

As we view section 60-502, the matter of possession goes to its very heart. The applicability of the section to specific situations essentially depends on whether the person involved is in or out of possession. So inextricably is possession interwoven into the fabric of the section, that we cannot say it would have been enacted without subsection (*d*) being included. No doubt the legislative plan was to define possession under certain conditions envisioned by the act. But so conflicting and contradictory is the language employed that ascertainment of exactly what those conditions were to be, becomes impossible. In this state of affairs, the language of *State ex inf. v. Street R'y Co.*, 146 Mo. 155, 47 S. W. 959, appears appropriate:

"The courts can not venture upon the dangerous path of judicial legislation to supply omissions, or remedy defects in matters committed to a co-ordinate branch of the government. It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers." (p. 169.)

Other points are raised in the briefs filed in this case, but in view of the decision reached, it is unnecessary to discuss them.

We are of the opinion that Section 60-502 of the Kansas Code of Civil Procedure (Laws 1963, ch. 303) is void because of uncertainty and ambiguity, and that the judgment of the trial court must be affirmed.

It is so ordered.